IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERTH WILLIAM ROJAS, #18310-078 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:17cv403 |
| | § | CRIMINAL ACTION NO. 4:09cr194(22) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *pro se* Movant Robert William Roja's  motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  After careful consideration and for the reasons stated below, the Court will deny the motion.

### I.  BACKGROUND

On October 19, 2012, a jury found Movant guilty of Count One (conspiracy to import five kilograms or more of cocaine and to manufacture and distribute five kilograms or more of cocaine intending and knowing that the cocaine will be unlawfully imported in the United States, in violation of 21 U.S.C. §§ 963, 960(b)(1)) and Count Two (manufacturing and distributing five kilograms or more of cocaine, and intending and knowing that the cocaine will be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960(b)(1)) of his indictment. On September 9, 2013, the District Court sentenced Movant to 235 months' imprisonment on each of Counts One and Two, to be served concurrently for a total term of 235 months.   The United States Court of Appeals for the Fifth Circuit affirmed Movant's conviction and sentence on January 28, 2016. *United States v. Rojas*, 812 F.3d 382, 416 (5th Cir. 2016). On June 6, 2016, the Supreme Court denied Movant's petition for writ of certiorari.

The Fifth Circuit Court of Appeals provided a statement of facts:

In October 2009, a grand jury returned a two-count indictment charging twenty-seven defendants with participation in a vast Colombian conspiracy to import cocaine into the United States. Count One charged a conspiracy offense under 21 U.S.C. § 963, alleging: (1) the defendants conspired to knowingly and intentionally import five or more kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 952 and 960; and (2) the defendants conspired to knowingly and intentionally 389 manufacture and distribute five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959 and 960. Count Two alleged that the defendants aided and abetted each other while intentionally and knowingly manufacturing and distributing five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2.

Nineteen of the twenty-seven defendants pled guilty, two died before they could be extradited to the United States, and two fled and remain fugitives. The four remaining defendants—appellants here—went to trial: Jaime Gonzalo Castibl Cabalcante ("Cabalcante"), Oscar Orlando Barrera Piñeda ("Piñeda"), Julio Hernando Moya Buitrago ("Moya"), and Roberth William Villegas Rojas ("Rojas").

The trial focused primarily on two drug transactions. The first transaction was a thwarted attempt in December 2007 to move at least 1,000 kilograms of cocaine from Colombia to Guatemala and, from there, to the United States–Mexico border and then into the United States. This particular plan involved a plane with tail number HP1607, and thus was often referred to by the parties as the HP1607 flight or the HP1607 deal. Cabalcante brokered the HP1607 deal by introducing the Colombian suppliers to the Mexican buyers, members of the Los Zetas drug cartel. The Zetas paid about $7.9 million for this deal—an amount that would have purchased several thousand kilograms of cocaine in 2007.

In Colombia, Carlos Eduardo Gaitan–Uribe ("Gaitan"), who was indicted in this conspiracy but died before trial, coordinated logistics by recruiting pilots, maintaining airplanes, securing clandestine airstrips, and contacting corrupt air traffic controllers. Defendant Moya, an air traffic controller who worked as a supervisor at the El Dorado International Airport in Bogota, agreed to help Gaitan get HP1607 through Colombian airspace. Defendant Piñeda was the pilot who flew HP1607 from Bogota to Panama for staging. Piñeda also coordinated the pilots who then flew the plane from Panama back into Colombia to pick up the cocaine.

HP1607's return trip to Colombia on December 20, 2007, did not go as planned. The Colombian Air Force detected the plane heading back to Colombia and sent a plane to follow HP1607 until it landed at a clandestine air strip. Because the Air Force

failed to make contact with HP1607 before it landed, the Air Force dispatched a combat aircraft to the landing strip. After firing warning shots with no response, the Air Force fired at HP1607 and destroyed it. In a wiretapped call after the thwarted HP1607 flight, Piñeda commented that they "were left without Christmas" and could instead "get together and cry together" about the failed flight. The Zetas held Cabalcante responsible for the failed transaction, holding him hostage for three months.

Although he was not involved in the HP1607 transaction, Defendant Rojas was involved in other cocaine transactions. Rojas was connected to the conspiracy through a drug trafficker named German Giraldo Garcia (alias "El Tio"), who was indicted in this case but remains a fugitive. El Tio worked with David Quinones ("Quinones"), Gaitan's logistics partner, to build an organization to import drugs into the United States. The main transaction concerning El Tio that the parties focused on at trial involved a deal he made in 2008 with a cocaine supplier named Jamed Colmenares (alias "El Turco"). Rojas was El Turco's right-hand man. The buyer for this $1.1 million deal was a Mexican man called "Chepa." This transaction also failed when, on October 22, 2008, the Colombian National Police intercepted a truck carrying about 1,000 kilograms of cocaine.

After Chepa held El Tio hostage for failing to deliver the cocaine, Chepa and El Tio agreed that El Tio would have to make up for the lost truck load. On November 26, 2008, El Tio had a meeting with Quinones, El Turco, and Rojas to plan their second attempt. Five days after the meeting, Rojas said over the phone that he had half the "luggage" at his house and was waiting for El Tio to tell him when to transport the load to an airplane so that it could be flown to Central America.

The Colombian National Police again thwarted this plan the very next day when the police seized 286 kilograms of cocaine found in a parked truck. Rojas paced the street in front of the parking lot while the police searched the truck. On a wiretapped call, Rojas told his boss, El Turco, that the cocaine had been seized again.

After a three-week trial, the jury found Cabalcante, Moya, and Rojas guilty of the § 963 conspiracy offense charged in Count One and all four defendants guilty of the § 959 distribution offense charged in Count Two. This appeal followed.

*Rojas*, 812 F.3d at 388-90.  At the close of the Government's rebuttal argument in closing, Movant's Counsel moved for a mistrial.  Counsel argued that the prosecutor's rebuttal argument went beyond the scope of the defendants' closings.  Criminal Action No. 4:09cr194(22) (Dkt. #1162 at 192-93).

The Court denied the motion, finding that the Government's rebuttal was responsive to the defendants' arguments concerning the alleged lack of specific intent to move the cocaine ultimately to the United States. *Id*. at 194.

> Additionally, after the jury began deliberations, it sent a note to the Court:

> THE COURT: All right.  We have a note from the jury.  Okay.  The note reads, We the jury request the following, and it goes Re: Count 1: If we agree that there was a conspiracy, must we believe that each – each is underlined – defendant knew or intended importation to the U.S., question  mark?  Or, if we believe there was a conspiracy and only one or two defendants had knowledge of importation to U.S. can we find all four guilty of Count 1.

Criminal Action No. 4:09cr194(22) (Dkt. #917 at 3).  The Court discussed with the attorneys how to respond:

> THE COURT: Well, but I'm just – what I'm going to do – obviously, they can't find all four because only three are charged.  I'm going to say, no, please note that only there defendants are charged.  Please – also, please read carefully the jury instructions regarding Count 1 of the indictment appearing on pages 13 through 20.

*Id.* at 4.  After more discussion, the Court decided what its response would be:

> Okay.  So it reads, "No.  Please note that only three of the defendants are charged in Count 1 of the indictment.  Please read carefully the instructions regarding Count 1 found on pages 13 through 15 of the Court's Instructions to the Jury, as well as the remainder of the instructions."

*Id.* at 10.

A jury found Movant, Cabalcante, and Moya guilty on Count One and all four defendants guilty on Count Two.  After sentencing Movant to 235 months' imprisonment, the Court denied a motion for new trial filed by Cabalcante, Moya, and Pineda on February 28, 2013. Movant's codefendants claimed that the Court's answer to the jury's question was inadequate.  They argued the Court should have answered "yes" to the first question and "no" to the second question.  In

4

denying the motion, the Court found that its response to the jury note was legally correct.

The instant motion was filed on June 8, 2017.  Movant asserts he is entitled to relief because of trial court errors, ineffective assistance of counsel, and actual innocence.  The Government filed a Response, claiming Movant's issues are without merit, to which Movant filed a Reply.

## II.  STANDARD FOR SECTION 2255 PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).  A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow.  A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992).  A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

## III.  PROCEDURAL BAR

It is well-settled that, absent countervailing equitable considerations, a § 2255 movant cannot relitigate issues raised and decided on direct appeal. *United States v. Rocha,* 109 F.3d 225, 299 (5th Cir. 1997); *Withrow v. Williams*, 507 U.S. 680 (1993).  "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are [generally] not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)).  It is also well settled that a collateral challenge may not take the place of a direct appeal.   *Shaid*, 937 F.2d at 231.  Accordingly, if Movant raised, or could have raised, constitutional or jurisdictional issues on direct appeal, he may not raise them on collateral review

5

unless he shows either cause for his procedural default and actual prejudice resulting from the error, or demonstrates that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent.  *Id*. at 232.

Movant argues he is entitled to relief because the Court erred in its response to the jury note. He also claims the Court erred by denying Movant's Counsel a surrebuttal argument in closing. Both of these issues could have been raised on direct appeal, but were not.  Therefore, they are procedurally barred.  *Id.*  Movant also claims that the Government failed to prove that he knew or intended that the cocaine was destined for the United States.  However, Movant raised the same argument on direct appeal, and the Fifth Circuit found it to be without merit. *Rojas*, 812 F.3d at 400-02.  The Fifth Circuit concluded that a reasonable jury "could have inferred that Rojas knew or intended that the cocaine in these two transactions was bound for the United States" and that Movant did not meet his burden of demonstrating that the evidence presented at trial was insufficient to support his conviction.  Accordingly, this issue is also procedurally barred. *Shaid*, 937 F.2d at 232.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Although it is not clear, it could be construed that Movant raises ineffective assistance of counsel claims on the same issues that are procedurally barred. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700.  A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the

6

evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).   The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at  697.

To the extent that Movant complains that Counsel was ineffective for failing to file a motion for new trial after the Court responded to a jury note, Movant cannot meet his burden of prejudice. Movant's codefendants filed a motion for new trial based on the jury note issue, and the Court denied the motion.  Criminal Action No. 4:09cr194(22) (Dkt. #978).  Had Movant's Counsel filed a motion for new trial on this basis, his motion would have been denied as well.  Therefore, Movant cannot show prejudice.  *Strickland*, 466 U.S. at 694.

To the extent that Movant complains that Counsel was ineffective for not providing a surrebuttal to the Government's rebuttal argument at closing, Movant fails to show deficient performance or prejudice.   First, Counsel objected at trial; thus, Movant fails to show ineffectiveness.  Second, Movant's codefendants challenged the Court's ruling on appeal, and the Fifth Circuit found the issue to be without merit. *Rojas*, 812 F.3d at 411-12.  Had Counsel raised the issue on appeal, the ruling would have been the same.   Movant fails to show deficient

performance or prejudice.  *Strickland*, 466 U.S. at 694.

Finally, Movant cannot show ineffective assistance of counsel concerning the sufficiency of the evidence argument.  Both Movant's trial counsel and appellate counsel raised, but lost sufficiency challenges.  Criminal Action No. 4:09cr194(22) (Dkt. #1161 at 22-45). "[A]t least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on appeal." *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (Alito, J., concurring).  Movant fails to show Counsel performed deficiently or that, but for Counsel's alleged errors, the outcome would have been different.  *Strickland*, 466 U.S. at 694.

## V.  ACTUAL INNOCENCE

Finally, Movant claims that he is actually innocent.  "Actual innocence means 'factual innocence and not mere legal insufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  A mere assertion of "stale factual innocence" is unpersuasive.  *Drew v. Scott*, 28 F.3d 460, 462 (5th Cir. 1994).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of  actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

In this case, Movant presents no newly discovered evidence to show he is factually innocent. He simply reurges claims and arguments that the Court and the Fifth Circuit have rejected.  This issue is without merit.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(B).   Although Movant has not yet filed a notice of appeal, the Court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*;  *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's  underlying constitutional claim, a [certificate of appealability] should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, Movant is not entitled to a certificate of appealability as to the claims raised.

## VII.  CONCLUSION

Movant raises several issues that are procedurally barred, and he fails to show court error. Movant also fails to show that Counsel's performance was deficient or that, but for Counsel's alleged ineffectiveness, the outcome would have been different.  Finally, Movant does not provide newly discovered evidence to support his argument that he is actually innocent.  In conclusion, Movant fails to show he is entitled to relief.

It is accordingly **ORDERED** the motion to vacate, set aside, or correct sentence is **DENIED** and the case is **DISMISSED** with prejudice.  A certificate of appealability is **DENIED**.  All motions not previously ruled upon are **DENIED**.

**SIGNED this 29th day of September, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

10